**Elodia B., Rosaire, Pauline, Gerald, Judy, Gilles, Mariette, Roger, Elaine, Gaston, Ruth, Marcel and Cecile Messier v. Robert Messier and Patricia Messier**

[438 A.2d 397]

No. 116-81

Present: **Barney, C.J., Billings, Hill and Underwood, JJ., and Larrow, J. (Ret.), Specially Assigned**

Opinion Filed November 3, 1981

Motion for Reargument Denied November 24, 1981

*Joel Page* of *J. M. Farrell Associates, Inc.*, Burlington, for Plaintiffs.

*Donald E. O'Brien* and *Howard J. Seaver*, Burlington, for Defendants.

**Hill, J.** This is an appeal by the defendants, Robert and Patricia Messier, from an order of the Franklin Superior Court modifying the report of commissioners in a partition proceeding. The defendants assert that the trial court erred when it modified the partition made by the commissioners. We agree and reverse.

The Messier family operated a 130-acre farm in Fairfield, Vermont, until 1965 when the family patriarch became ill. He died in 1968, and the farm was conveyed through a straw man to his widow and seven sons as joint tenants. In 1973 and 1974, individual lots were conveyed to four of the Messier sons, Gilles, Rosaire, Gerald and Robert, by the other members of the family. Each of the four brothers built a house on his lot.

Apparently, the Messier family was unable to amicably complete the division of the farm. Plaintiffs, the mother and six brothers of the defendant Robert, brought suit seeking partition of the farm. On November 20, 1978, the parties entered into a stipulation designed to resolve their dispute. The trial court issued a judgment order directing that the farm be partitioned by commissioners "all as provided for in the parties' Stipulation, in Chapter 179 of Title 12 of Vermont Statutes Annotated, and in V.R.C.P. Rule 53."

The trial court also issued an order of reference pursuant to V.R.C.P. 53. In this order the court appointed three commissioners and instructed them to partition the farm in accordance with both 12 V.S.A. §§ 5161–5188 and the parties' stipulation of November 20, 1978.[1] Both parties reserved the right to object to the commissioners' report.

The commissioners, as directed by the order of reference, held a preliminary hearing at which the parties presented evidence. Following this hearing the commissioners met separately with the parties, the attorneys involved, and walked the farm boundaries. They then proceeded to set off the property to the parties and filed a report of the partition with the court.

Plaintiffs objected to the report contending, inter alia, that the commissioners did not divide the farm into parcels of substantially equal value as stipulated and that the proposed boundaries of the homestead parcel were irregular and unreasonable. Prior to holding a hearing on these objections the court recommitted the report and requested detailed explanations from the commissioners. The commissioners resubmitted the report with the requested findings.

On September 19, 1980, the court held a hearing on the plaintiffs' objections to the report. The court heard the testimony of five witnesses and viewed the property. Based on the evidence produced at the hearing the court concluded that the section of the report establishing the homestead boundaries

---

[1] The stipulation provided in relevant part that:

The Court shall enter judgment providing that the real estate referred to in the complaint as the 130 acre Messier Farm shall be partitioned by Commissioners so that each of the seven (7) Messier brothers, parties hereto, shall be allocated a parcel of land of substantially equal value or benefit compared with that of the others, and that the homestead buildings shall be allocated to Elodia Messier by the Commissioners on a parcel by determining the boundaries thereof in view of the respective views and opinions of the parties, with particular reference to the north and east boundaries of said homestead lot.

. . . .

The parcels of land held by Rosaire, Gerald, Robert and Gilles shall be retained by them and treated by the Commissioners as having been received by them in partial account of their respective rights to an equal one-seventh share of the farm, excepting the homestead which shall be assigned to Elodia Messier.

was "clearly erroneous" because it failed to provide sufficient land for the use of a ramp to a barn. The court then entered judgment, purportedly pursuant to 12 V.S.A. § 5172 and V.R.C.P. 53(e)(2), modifying the commissioners' report to extend the homestead boundary lines so as to permit "reasonable use of the homestead barn." That modification reduced the size of the property set off to the defendants and they promptly objected. On appeal, the defendants claim error in the court's modification of the commissioners' partition report.

Partition of real estate is governed by 12 V.S.A. §§ 5161–5188 and V.R.C.P. 53. It is the trial court's duty to first determine whether or not partition is authorized by the statute. 12 V.S.A. § 5169. Once judgment is entered that partition be made the court must appoint three disinterested residents of the county where the property lies as commissioners. *Id.* It is then the commissioners' duty to make partition of the property and set off the parties' respective shares. *Id.* The partition made by the commissioners is not final until their report has been made to and accepted by the trial court, and judgment rendered. *Billings* v. *Billings*, 114 Vt. 70, 73, 39 A.2d 748, 750 (1944). But the commissioners' report must be accepted by the court "[u]nless cause is shown." 12 V.S.A. § 5172. Neither the statute, nor our case law, provide any guidance as to what constitutes "cause" for the court to reject the commissioners' report.

The provisions of V.R.C.P. 53 provide the answer to this question. The procedures set forth in the Rule are expressly applicable to commissioners in partition proceedings. Reporter's Notes, V.R.C.P. 53. Most importantly, under Rule 53(e)(2), the trial court shall accept the masters' findings of fact unless clearly erroneous. The parties agree that the commissioners' report is such a finding of fact. What the parties disagree on is the standard of review to be applied by this Court.

Plaintiffs contend that our review is limited to ascertaining whether the trial court's substituted findings are clearly erroneous and that there is no review of the Court's rejection of a portion of the report. The defendants dispute this, asserting that we must review the trial court's modification of the report

by determining ourselves whether the commissioners' findings were clearly erroneous. We have not previously addressed this issue.

Rule 53 is derived from Fed. R. Civ. P. 53, with some modifications from the comparable Maine Rule. Reporter's Notes, V.R.C.P. 53. A review of decisions interpreting Rule 53 by the courts of both these jurisdictions leads us to reject the plaintiffs' argument. The clear line of federal authorities hold that on review of Rule 53 proceedings the threshold question for the appellate court is "the same as it was in the court below,—whether, as a matter of law, the master's findings of fact were clearly erroneous." *Ferroline Corp.* v. *General Aniline & Film Corp.*, 207 F.2d 912, 920 (7th Cir. 1953); accord, *United States* v. *Hilliard*, 412 F.2d 174, 175 (8th Cir. 1969); *Gross* v. *Fidelity & Deposit Company of Maryland*, 302 F.2d 338, 339 (8th Cir. 1962) ; *London* v. *Troitino Brothers, Inc.*, 301 F.2d 116, 117 (4th Cir. 1962). The Maine Supreme Judicial Court also conducts an independent review of the record in cases involving references to masters in order to determine which findings, master or trial court, should stand. *Wendward Corp.* v. *Group Design, Inc.*, 428 A.2d 57, 61 (Me. 1981); *Sheridan Corp.* v. *Silsby*, 410 A.2d 225, 227 (Me. 1980); *Boothbay Harbor Condominiums, Inc.* v. *Department of Transportation*, 382 A.2d 848, 854 (Me. 1978). These decisions recognize that to do otherwise would render illusory any meaningful review of the "clearly erroneous" mandate of Rule 53 because of the deference which must be accorded the trial court's findings pursuant to Rule 52. See, e.g., *Taran* v. *Vermont Structural Slate Co.*, 139 Vt. 441, 443, 431 A.2d 448, 450 (1981); *Darling* v. *Ennis*, 138 Vt. 311, 314, 415 A.2d 228, 230–31 (1980).

The power of a master is completely dependent upon the order of reference. V.R.C.P. 53(c); *United States* v. *International Business Machines Corp.*, 66 F.R.D. 154, 158 (S.D.N.Y. 1974). Here the order of reference, incorporating the parties' stipulation, directed the commissioners to partition the farm by allocating a parcel of land of "substantially equal value or benefit" to each of the. Messier brothers. Implicit in the commissioners' report was a finding that they had so partitioned the property. This finding was to be accepted

by the court unless clearly erroneous, V.R.C.P. 53(e)(2), which is the same standard as that governing appellate review of trial court findings of fact. See V.R.C.P. 52(a); 9 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2614, at 809-10 (1971). The commissioners' report, therefore, should not have been modified by the trial court if any credible evidence fairly and reasonably supported it. *Frogate* v. *Kissell*, 138 Vt. 167, 169, 412 A.2d 1138, 1139 (1980); *Tallarico* v. *Brett*, 137 Vt. 52, 57, 400 A.2d 959, 963 (1979); *Seaway Shopping Center Corp.* v. *The Grand Union Stores, Inc.*, 132 Vt. 111, 116, 315 A.2d 483, 486 (1974). Plaintiffs, as the party objecting to the commissioners' findings, bore the burden of proving them to be clearly erroneous. E.g., *Oil, Chemical & Atomic Workers International Union* v. *NLRB*, 547 F.2d 575, 580 (D.C. Cir.), *cert. denied*, 431 U.S. 966 (1977); *Badger By-Products Co.* v. *Employers Mutual Casualty Co.*, 64 F.R.D. 4, 6 (E.D. Wis. 1974); *Esdale* v. *Edwards*, 28 F.R.D. 390, 392 (W.D.N.C. 1961).

In light of the foregoing principles, we are satisfied from careful consideration of the record that the findings of the commissioners were not clearly erroneous and that the trial court improperly modified the report. The hearing on the report was primarily concerned with the north and east boundaries of the homestead parcel. The court held that the lines established by the commissioners were clearly erroneous because those boundaries would not allow sufficient distance behind the barn for the use of an existing ramp. It was undisputed, however, that the property had not been farmed since 1964 or 1965, that the barn was used only for storage, and that the ramp was nonfunctional at the time partition was made. Moreover, the report expressly noted that the defendants gave up road frontage, thereby making an equitable partition possible. The only substantial evidence produced in opposition to this by the plaintiffs was the testimony of a realtor that the irregular boundaries of the homestead parcel could conceivably reduce its market value. Upon this record the findings of the commissioners are supported by credible evidence and are not clearly erroneous.

*Judgment reversed and cause remanded for entry of judgment order adopting the commissioners' partition report without modification.*