## Vincent M. Albanese v. Warren L. Condit

[450 A.2d 1141]

No. 384-81

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed September 7, 1982

*Kristensen, Cummings, Murtha & Stewart,* Brattleboro, for Plaintiff-Appellee.

*Divoll & Doores, P.C.,* Bellows Falls, for Defendant-Appellant.

**Barney, C.J.** This litigation is the result of an oral agreement made between casual friends to purchase land and construct a ski house in Stratton, Vermont. Shortly after the land was purchased and construction of the house was begun, the parties began feuding over how expenses connected with the project were to be accounted for. Over the next fifteen years their disagreements mounted, culminating in this action for partition of the real estate and for an accounting, pursuant to 12 V.S.A., Chapters 179 and 161.

Commissioners were appointed by the court to make partition and to examine and adjust the accounts between the parties. 12 V.S.A. § 5169. Hearings were held in the matter on October 26, 1979, and on March 7, 1980, and the commission reported its findings and conclusions to the court on August 14, 1980, which were adopted by the court over the defendant's objection on July 21, 1981. A judgment order subsequently issued decreeing that the property be sold and that the proceeds be divided equally between the parties after payment of the usual costs and expenses.

The defendant appeals. He contends that the findings of the commissioners are inadequate, and because inadequate, that they entitle him to a new hearing. The essence of his claim is that he is entitled to more than one-half of the proceeds from the sale of the property, and that unless the commissioners can reach that conclusion from the evidence before them, their review must be held in error. We do not agree.

The parties, both out-of-state residents and at one time members of the same ski club, entered into a joint venture in 1963, which the commissioners found best characterized as an investment in real property and its development. The nature of the project made it also personally advantageous to each of them, in that the house they designed could be occupied by two distinct individuals or couples, each having a similar bedroom and bath area, and sharing a common kitchen and livingroom. Thus each "half" would be available to the party owning it for his own lodging if he desired to spend a period of time skiing in Vermont, yet would also be potentially rentable if he did not.

The plaintiff and the defendant agreed that each would contribute $500 toward the $1,000 purchase price of the land, and an additional $3,000 of his own money toward construction of the house, with the plaintiff in addition to lend his credit and legal expertise toward the securing of a $10,000 construction loan, and the defendant, for his part, to supervise the construction. To this extent the agreement was apparently carried out without difficulty, and both the title to the real estate and the promissory note for the loan reflected the parties' status as co-owners.

As construction progressed the defendant requested additional funds from the plaintiff, which the plaintiff was prepared to advance, but not without an accounting from the defendant as to how the previously acquired money had been used. This the defendant could not or would not provide, and the hostilities began. Over the next fifteen years the plaintiff, who never once used the house, repeatedly requested an accounting from the defendant, which was never given. The defendant, in turn, who had the complete and total use of the property and at times rented it to third parties, continued to make the mortgage payments and take responsibility for upkeep and maintenance, and kept any and all rents and profits which may have accrued, to himself.

During the course of the commission proceedings, the defendant failed to produce supporting evidence to substantiate his claim that he was entitled to more than half of the proceeds from the sale of the property, or indeed to allow the commissioners to determine the figures involved in his claim with precision or certainty. Nor was he able to account credibly for either the frequency of rental, or the income which resulted. The commissioners found that many of the records bearing on these matters had been destroyed by the defendant, some of them after commencement of the proceedings.

Faced with this state of the proof, and after considering various alternative methods of determining credits and debits for rents, expenses, value of occupancy or capital improvements which were suggested by both parties, the commissioners found that the defendant's exclusive use of the property since its acquisition, coupled with his receipt of whatever rents had been collected over that period, was adequate compensation for whatever expenditures he may have made

during this period for improvements, maintenance, upkeep and mortgage payments. The commissioners then went on to recommend that neither party be debited or credited on account of improvements since initial construction, or for any other rents or expenses since acquisition of the property, and this recommendation was accepted by the court.

■■ On review the question before us is whether the commission's findings were erroneous as a matter of law. V.R.C.P. 52; *Messier* v. *Messier*, 140 Vt. 308, 313, 438 A.2d 397, 399 (1981). We cannot say that they were. Where the occupancy of one tenant in common is beneficial, and at a profit to such occupant, and is entire and exclusive, he is bound to account to his co-tenant for what he has received by such occupancy more than his just proportion, whether in the form of rents or of profits derived from use and occupation. *Aldrich* v. *Stevers*, 115 Vt. 379, 381–82, 61 A.2d 551, 552 (1948). The defendant failed to do this voluntarily, and the plaintiff was entitled to have it done by the commissioners in his stead.

■ The commission's attempt to make a mathematically precise final accounting between the parties was hampered only by the defendant's own inability or unwillingness to produce documentation, and absent such documentation the commissioners acted reasonably in taking testimony on costs and values in the area during the years in question and in applying these figures to the accounts of each party. Their findings reflect a consideration of both the bare evidence and the witnesses' credibility, and although some of the evidence was conflicting, its weight and persuasive effect were matters for their determination, as triers of fact. *Stamato* v. *Quazzo*, 139 Vt. 155, 158, 423 A.2d 1201, 1203 (1980). Taking the evidence in the light most favorable to the prevailing party and excluding the effect of any modifying evidence, the findings specifically challenged find support in the record. *Id.*

*Judgment affirmed.*